**FAINE et ux. v. WILSON et al.**
**No. 11965.**

Court of Civil Appeals of Texas. Galveston.
March 4, 1948.

Rehearing Denied March 25, 1948.

Alton King, of Palestine, for appellants.

Justice, Moore & Justice and R. Homer Moore, all of Athens, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellees, Lucile Cummings Wilson and her husband, Charles B. Wilson, in a trespass to try title action for the recovery from appellants, Frank Faine and Lillie Faine, of the title to and possession of 90 acres of land, more or less, a part of the Benge League and Labor Survey, in Anderson County, Texas.

Appellants answered by a plea of not guilty and by general denial, a sworn denial of execution and delivery of a quitclaim deed to appellees, and a plea of homestead. They especially plead the 4 year statute of limitations, Art. 5520, R.C.S. of 1925, Vernon's Ann.Civ.St. art. 5520.

In answer to special issues submitted, a jury found, in substance, that appellants had held possession of the land in controversy as tenants of appellee Mrs. Lucile Cummings Wilson and her predecessor in title, from the year 1930 until the year 1941, inclusive, and that during that period of time appellant Frank Faine had paid to the agents of Mrs. Wilson and her predecessor in title, rentals from the crops grown on said land. The jury found that appellant Frank Faine had executed and delivered a quitclaim deed to Mrs. Wilson, dated December 1, 1943. Based on the answers to such special issues, judgment was rendered that appellees have and recover from the appellants the title to and possession of the land in controversy, and that the relief sought by the appellants in the suit be denied.

In a previous appeal of this cause (192 S.W.2d 456), this Court, in reversing and remanding the case, held that there was evidence in the record at the former trial from which it might be developed on another trial that appellants had attorned to Mrs. Cummings and had remained on the premises in controversy as tenants paying rent, and that in the event they had done so, appellees would be shown to have been "mortgagees in possession" of the premises in controversy.

The record shows that Eliza Roberts is the agreed common source of title. By warranty deed dated April 17, 1920, she conveyed the land in controversy to W. H. Miller, reserving a vendor's lien therein to secure the payment of five notes—one for the sum of $1000, and four for the sum of $500 each. On October 16, 1922, Eliza Roberts assigned said five notes, with the vendor's lien by which they were secured, to M. C. Parrish. By instrument dated May 7, 1923, M. C. Parrish assigned notes 4 and 5 of said series, for the sum of $500 each, to Oklahoma Farm Mortgage Company, and W. H. Miller and wife renewed and extended the date of payment thereof to October 1, 1932, and executed a deed of trust in favor of Oklahoma Farm Mortgage Company as additional security therefor. By instrument dated May 3, 1923, Oklahoma Farm Mortgage Company assigned said two notes and the lien to Mrs. J. J. Cummings. On September 15, 1925, M. C. Parrish conveyed the land in controversy to Frank Faine, who assumed the payment of the $1000 indebtedness secured by the deed of trust to Oklahoma Farm Mortgage Company and the vendor's lien on said land. Frank Faine and this wife, Lillie Faine, have lived on the land continuously since June, 1929. On June 4, 1929, Mrs. J. J. Cummings, the then owner and holder of said renewal note and lien, which

was then unpaid, exercised her option to accelerate the maturity of said indebtedness. By substitute trustee's deed dated June 4, 1929, the land was conveyed to Mrs. J. J. Cummings, who died intestate, leaving appellee Mrs. Lucile Cummings Wilson as her sole surviving heir.

Frank LaRue, a witness for appellees, testified that while acting as agent for Mrs. Wilson, he had rented the land in controversy to appellant Frank Faine for the years 1943 and 1944, and that Faine had signed a contract for the rental of said land from Mrs. Wilson, and that he had collected rents from Faine for two or three years. He testified that Faine had told him that he had also paid rentals to a Mr. Easterwood, a former agent for Mrs. Wilson. He testified that on December 1, 1943, Frank Faine had executed an instrument quitclaiming and releasing to Mrs. Lucile Cummings Wilson all of his right, title and interest in the land in controversy; that Frank Faine had told him at the time he executed said deed and rental contract that he had bought the land in controversy from Mr. Parrish, and had made a down payment on it, but that after he had made his payment he found that there was a second lien on the land for more than the place was worth, and that Mr. Easterwood, the agent for Mrs. Wilson, who was looking after the place, had foreclosed on it and had told him that he could stay on the land as long as he wanted to. He testified that Frank Faine had told him he had decided not to pay for the place.

Homer Lee Parsons, a witness for appellees, testified that Frank Faine had signed a written lease on the property for the year 1941, which was introduced in evidence.

In passing on the power of the husband to dispose of his homestead without his wife's consent, the Supreme Court of this State, in the early case of White v. Sheppard, 16 Tex. 163, at page 172, in an opinion rendered by Chief Justice Hemphill, said:

"This restriction (against a husband selling his homestead without the joinder of his wife) applies where the husband has acquired full property in the land, and not where it is charged with preceding equities or incumbrances. These must be discharged, and they have precedence over the rights of the homestead privilege; and the right of the husband to make arrangements in relation to these incumbrances, or to renounce lands thus burdened or subject to conditions and contingencies, could not be questioned by the wife, in virtue of her remote right which might arise, if the incumbrances or conditions were ever discharged or removed, unless in cases where the husband is squandering the property, with the fraudulent design of depriving the wife of a homestead."

In the case of Odom v. Empire Building and Loan Ass'n, Tex.Civ.App., 134 S.W.2d 1053, under a similar state of facts, it was held that the husband alone, without the wife's joinder, had the right to renew, extend and adjust all prior existing debts and liens, and if necessary, to sell the homestead to satisfy such indebtedness. It was there held that the only limitations to the right of the husband to extend and adjust such encumbrances, or to sell the home to satisfy such liens, was that he act in good faith and not in fraud of the homestead rights of the wife.

It is the general rule in this State that a mortgagee lawfully in possession of the mortgaged property has the right to retain possession thereof until his debt is paid, even though the debt is barred by limitations. Jasper State Bank v. Braswell et al., 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329, and authorities there cited.

In the instant case the jury found from undisputed evidence that appellants had rescinded the executory contract for the purchase of said land and had gone into possession thereof as the tenants of appellees.

Frank Faine did not take the witness stand to deny this testimony or explain his acts, or to deny the execution of the quitclaim deed conveying his interest in the land to Mrs. Wilson.

Under this record there was, we think, sufficient legal testimony to justify the jury in finding that appellants had remained on the premises as tenants of Mrs. Wilson and her predecessor in title, paying rent therefor; that there was a valid rescission

of the executory contract to purchase said land, and that the appellant Frank Faine executed the quitclaim deed conveying his interest in the land in controversy to appellee Mrs. Wilson.

Under these facts the judgment of the trial court must be in all things affirmed.